FILED
APR 0 2 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES,

        Plaintiff,

v.

OSEGERA-GONZALEA, et al.,

        Defendants.

CR. 08-126-MO

OPINION AND ORDER

PAPAK, Magistrate Judge:

    Defendants Armando Padilla-Diaz and Jeses Perez-Huerta and ten co-defendants are charged in an eight-count indictment alleging conspiracy, distribution and possession with intent to distribute methamphetamine. Defendants' motion to compel is now before the court.

## LEGAL STANDARD

    Under Federal Rule of Criminal Procedure 16(a)(1)(E)(ii), upon a defendant's request, the

Page 1 - OPINION AND ORDER

government must permit the defendant to inspect items within the government's "possession, custody, or control" and material to the defense. Fed. R. Crim. P. 16(a)(1)(E)(ii). A defendant must make a prima facie showing of materiality to obtain discovery under Rule 16. *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (citation omitted). Evidence is material under Rule 16 if it is helpful to a possible defense, *United States v. Olano*, 62 F.3d 1180, 1203 (9th Cir. 1995), or if it will enable the accused to "substantially alter the quantum of proof in his favor." *United States v. Marshall*, 532 F.2d 1279, 1285 (9th Cir. 1976) (citations omitted). "Neither a general description of the information sought nor conclusory allegations of materiality suffice." *Mandel*, 914 F.2d at 1219.

## BACKGROUND

In early 2008, the government obtained a Title III wiretap based on affidavits authored by FBI Special Agent Raul Bujanda. The government submitted an initial wiretap application on January 22, 2008. The court granted the application. On February 20, 2008, Bujanda executed an affidavit in support of the government's request to extend the previously granted wiretap to include a newly discovered phone.

In his initial affidavit, Bujanda described a "Mexican Drug Trafficking Organization," jointly commanded by Mariana Franco-Maldonado (Franco) and Jaime Osegera-Gonzales (Osegera). Bujanda obtained the information that Franco and Osegera worked together from an informant. Bujanda's initial affidavit also states that the informant indicated that the Mexican Drug Trafficking Organization "has close affiliations with Los Zetas," the "strong arm of the Gulf Cartel." It further states that the informant asked to play a "minimal role" in the investigation out of fear of retaliation from Los Zetas.

Page 2 - OPINION AND ORDER

Bujanda's initial affidavit also indicates that the informant obtained information from "Chino," a broker of drug transactions. Chino told the informant of the businesses associated with Franco and Osegera and that he believed Franco laundered drug proceeds through her business. Chino also established drug meetings between the informant and the targets of the investigation. In addition, Chino warned the informant to be careful negotiating prices with Osegera and Franco because they worked for the same organization. He explained that Osegera and Franco both take orders from the same organization, which is based outside of Oregon, and that they were both independent to make decisions in Oregon but ultimately answer to leaders associated with their supply.

Bujanda's affidavit also describes a conversation that took place between the informant and Osegera while they were at the Inverness Jail in February of 2000. The government has since admitted that the February 2000 date indicated in the affidavit was in error and that the conversation actually took place approximately two years later.

Although Bujanda's affidavit included the informant's criminal history, it did not include any information on Chino's criminal record or credibility. Bujanda indicated that a check of the Law Enforcement Data system and National Crime Information Center reflected that the informant had a 2002 conviction for delivery and manufacture of a controlled substance. He also reported that the informant had convictions for first degree theft and possession of heroin, but did not include other information regarding those convictions. Because the informant self-reported the theft and possession convictions and they did not appear in the government's search, the government does not know the details for those convictions. As for Chino, the defendants presented evidence that the government knew he was a drug trafficker but Bujanda's affidavit did

Page 3 - OPINION AND ORDER

not include any indicia of his credibility.

Bujanda used the information the informant obtained from Chino as the basis for his conclusion that Franco and Osegera led factions of a single drug trafficking organization. The government's corroboration of this information, however, consisted of surveillance photos that confirmed Chino's existence. In addition, Chino introduced the informant and Bujanda, posing as drug dealers, to Jorge Pacheco, a distributor of heroin.

Pacheco was murdered in Vancouver, Washington on December 20, 2007, before the initial wiretap. Bujanda's January 22 affidavit in support of the initial wiretap indicates that Pacheco and two associates were murdered "execution style." It also states that the homicide was under investigation and that details were withheld to preserve the integrity of the investigation.

In his February 20 affidavit, Bujanda indicated that wiretap interceptions had confirmed that Franco and Osegera were leaders of a Mexican drug trafficking organization in Oregon. He added, however, that after the murder of Pacheco, the Franco and Osegera factions of the organization splintered into two separate entities and had no contact. Bujanda further stated that he believed the two groups were connected through Pacheco, who had served as the heroin supplier to both groups. The government now admits that it ultimately learned that the two groups were not working together.

## DISCUSSION

Padilla-Diaz and Perez-Huerta contend that the charges against them arise primarily from evidence produced by the wiretaps that the government secured on the basis of Agent Bujanda's affidavits. They intend to seek a hearing to challenge Bujanda's affidavits, which they claim conflated investigations of unrelated drug trafficking activity based only on Chino's

Page 4 - OPINION AND ORDER

uncorroborated statement that Franco and Osegera worked together. *See United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000) (a defendant is entitled to a hearing on the validity of an affidavit underlying a search warrant if the defendant can make preliminary showing that 1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and 2) the affidavit cannot support a finding of probable cause without the allegedly false information); *see also Franks v. Delaware*, 438 U.S. 154, 171 (1978). In addition, they claim that Bujanda's affidavit misled the court regarding the available investigative options. In challenging Bujanda's affidavit, they ultimately seeks to have the wiretap evidence suppressed. Thus, they seek production of the disputed discovery material in time to permit evaluation and investigation prior to the June 15 deadline for filing defense motions.

In addressing defendants' motion, I apply the Rule 16 standard set out above. I do not reach whether defendants are entitled to an evidentiary hearing to challenge Bujanda's affidavit nor do I make any conclusions regarding the outcome of such a hearing. In addition, I do not reach whether the government may invoke the informant privilege to protect the confidentiality of the informant at that hearing. Although the defendants both argue that the government has failed to justify its position that the informant privilege applies, they have not moved for disclosure of the identity of the informant. I therefore proceed under the assumption that the informant privilege applies. If defendants seek to know the identity of the informant in addition to the discovery they seek in their present motion, they may file a motion toward that end.

## I.   Information Related to the Informant

A law enforcement officer's failure to fully to disclose the criminal history of a confidential informant in a search warrant affidavit may serve as ground to suppress evidence

when the criminal history renders the informant unworthy of belief and the affidavit lacks probable cause as a result. *Reeves*, 210 F.3d at 1045; *United States v. Hall*, 113 F.3d 157, 160 (9th Cir. 1997). Moreover, although the Ninth Circuit "recognize[s] the importance of maintaining the confidentiality of police informants," it disapproves of "the practice of excluding altogether an informant's relevant criminal history from an affidavit used to support a search warrant request, particularly when lesser measures will suffice." *Reeves*, 210 F.3d at 1046. For example, "an informant's criminal history may be 'sanitized' by replacing clearly identifying details with a more general description of the relevant facts." *Id.*

Here, the defendants seek to discover the identity of Chino but they have not met the Rule 16 materiality standard for that request. Specifically, they have failed to articulate why they need the identity of Chino when the government has admitted that Chino's suggestion that Franco and Osegera worked together was inaccurate. In addition, the government contends that Chino may be able to identify the informant. Bujanda's effort (or lack of effort) to verify Chino's credibility, however, could bear on the defendants' anticipated challenge to the affidavit. Accordingly, if it has not already done so, the government must turn over information in its possession related to Chino's credibility, including his or her criminal history, but may redact information that would identify Chino.

I similarly grant only a portion of defendant's request to discover various details regarding the informant. As I explained at oral argument, defendants have not met the materiality standard for the jurisdictions of the informant's convictions and the payments made to the informant in prior cases. Moreover, because the government stated on the record that the jail conversation between Osegera and the informant took place approximately two years later than Bujanda

Page 6 - OPINION AND ORDER

indicated in his affidavit, I will not require that the government verify that statement by submitting the jail records to me for in camera review. The dates and sentences for the informant's theft and possession convictions, however, bear on the informant's credibility. I therefore require that the government provide the dates and sentences for the informant's theft and possession convictions to the extent that it can ascertain that information from the records at their disposal.

## II.   Jorge Pacheco Murder Investigation

Defendants seek U.S. Marshal Service reports related to the investigation of the murder of Jorge Pacheco, including information that the government withheld when Bujanda submitted his initial wiretap investigation. Defendants, however, justify their request with general statements indicating that the reports could contain information useful to their challenge of Bujanda's affidavit. Moreover, the government indicates that the Padilla-Diaz prosecution has no reports of the Pacheco murder investigation, nor is that investigation part of the present case. Accordingly, I deny defendants' motion to compel production of the Pacheco murder investigation reports. *See United States v. McDavid*, No. 06-35, 2007 U.S. Dist. LEXIS 25277, at *9-10 (E.D. Cal. Mar. 27, 2007) (denying defendant's motion to compel where defendant speculated that alleged electronic surveillance could contain impeachment material and did not make a showing that the prosecution had knowledge of and access to the surveillance).

## CONCLUSION

Defendants Padilla-Diaz (#84) and Perez-Huerta's (#87) motion to compel is granted in part and denied in part. The government must turn over information in its possession related to Chino's credibility, including his criminal history, but may redact information that would identify

Page 7 - OPINION AND ORDER

Chino. Additionally, the government must provide the dates and sentences for the informant's theft and possession convictions to the extent that it can ascertain that information from the records at their disposal. The government should produce this information no later than April 10, 2009. The remainder of defendants' requests for discovery are denied.

IT IS SO ORDERED.

Dated this 2nd day of April, 2009

_____
Honorable Paul Papak
United States Magistrate Judge